Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Karina Flanagan

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARINA FLANAGAN, individually, and on behalf of other members of the general public similarly situated, | Case No.: 5:23-cv-02074-SSS-SHK |
| Plaintiff, | Assigned to the Hon. Sunshine S. Sykes |
| vs. | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| SBARRO LLC, a New York limited liability company; and DOES 1 through 10, inclusive, | Date:    June 13, 2025 |
| Defendants. | Time:    2:00 p.m. |
| | Place:    Courtroom 2 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 13, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Department 2 of the above-captioned court, located at 3470 Twelfth Street, Riverside, California 92501, the Honorable Sunshine S. Sykes presiding, Plaintiff Karina Flanagan will, and hereby does, move this Court for entry of an order and judgment granting final approval of the settlement and all agreed-upon terms therein. This Motion, unopposed by Defendant Sbarro LLC, seeks final approval of: (1) the Joint Stipulation of Class Action and PAGA Settlement and Release, (2) settlement payments to Participating Class Members, PAGA Members, and the LWDA, and (3) costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Final Approval of Class Action and PAGA Settlement; (3) the Declaration of Bevin Allen Pike; (4) the Declaration of Kaylie O'Connor on behalf of CPT Group, Inc., the settlement administrator; (5) the [Proposed] Order and Judgment; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: April 30, 2025                         Respectfully submitted,

                                        By: /s/ Bevin Allen Pike
                                            Bevin Allen Pike
                                            Daniel Jonathan
                                            Trisha K. Monesi
                                            **CAPSTONE LAW APC**

                                            Attorney for Plaintiff Karina Flanagan

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTS AND PROCEDURE ................................................................ 3

    A.    Brief Overview of the Litigation ................................................ 3

    B.    The Proposed Settlement Fully Resolves Plaintiff's Claims ............................ 4

        1.    Composition of the Settlement Class ................................ 4

        2.    Settlement Consideration .................................................. 5

        3.    Releases by Participating Class Members and PAGA Members ............. 5

    C.    The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order ................................................ 6

III.  ARGUMENT ....................................................................................... 7

    A.    Class Certification Requirements Are Met ........................................ 7

    B.    The Court Should Grant Final Approval of the Class Settlement .................... 7

    C.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel .......................................................... 9

    D.    The Extent of Discovery Completed Supports Preliminary Approval ............. 9

    E.    The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation ................................................ 9

    F.    The Settlement Class Has Responded Positively to the Settlement ............... 11

    G.    The Court Should Approve the PAGA Settlement ......................................... 12

    H.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval ................................................ 14

IV.   CONCLUSION ................................................................................. 14

1

# TABLE OF AUTHORITIES

2

3 **STATE CASES**

4 *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ........................................... 13

5 *Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021) ....................................... 12

6 *Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) ................................................ 14

7

8 **FEDERAL CASES**

9 *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ..................................................... 8

10 *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D.

11     Cal. July 21, 2014) ................................................................ 11

12 *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021) ......................................... 13

13 *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................. 7

14 *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .................. 11

15 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................................... 7

16 *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................... 13

17 *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011

18     WL 7563047 (C.D. Cal. Aug. 12, 2011) ....................................... 13

19 *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC,

20     2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................. 11

21 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 7, 8, 11

22 *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS

23     33900 (N.D. Cal. Apr. 3, 2009) .................................................. 14

24 *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) ...................... 11

25 *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770

26     (N.D. Cal. July 22, 2019) ........................................................... 8

27 *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) ........................ 11

28 *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) .............................. 7

1    *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................. 11

2    *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002) ......................... 11

3    *Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal.

4      2004) ...................................................................................................................... 11

5

6    S<small>TATE</small> S<small>TATUTES</small>

7    Cal. Lab. Code § 2699(h) ...................................................................................... 13

8

9    F<small>EDERAL</small> S<small>TATUTES</small>

10   Fed. R. Civ. P. 23(a)................................................................................................ 7

11   Fed. R. Civ. P. 23(b)(3).......................................................................................... 7

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On January 16, 2025, this Court granted preliminary approval of the Joint Stipulation of Class Action and PAGA Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement to all Class Members. Class Members were given 45 days to opt out or object to the Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiff Karina Flanagan is pleased to report that: (1) no Class Members opted out; (2) no Class Members objected to the Settlement; (3) the **entire Net Settlement Fund will be disbursed to all Participating Class Members**; (4) the average payment to Participating Class Members from the Net Settlement Fund is $261.72, and the highest is $1,644.24. (Declaration of Kaylie O'Connor ["O'Connor Decl."] ¶¶ 6-8.)

Plaintiff now moves for final approval of the class action and PAGA settlement. This motion is unopposed by Defendant Sbarro LLC (collectively with Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

(1)    Conditional certification of a Settlement Class defined as: All persons who worked for Defendant as non-exempt, hourly employees in the State of California at any time from July 25, 2018 through July 4, 2024 ("Class Members").

(2)    A **non-reversionary** Gross Settlement Amount of $775,000. The Gross Settlement Amount includes:

(a)    A Net Settlement Fund (the Gross Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, and the Class Representative Enhancement Payment), which will be allocated to all Class

---

[1] Hereinafter, the "Settlement" or "Settlement Agreement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement.

1                           Members on a pro-rata basis according to the number of weeks each

2                           Class Member worked during the Class Period. **The entire Net**

3                           **Settlement Fund will be paid to all Participating Class**

4                           **Members.**

5        (b)     Attorneys' fees in the amount of one-third of the Gross Settlement

6                           Amount (or $258,333), and litigation costs and expenses of

7                           $17,770.87, to Capstone Law APC ("Plaintiff's Counsel").

8        (c)     Settlement administration costs of $15,250, to be paid to the jointly

9                           selected Settlement Administrator, CPT Group, Inc. ("CPT").

10       (d)     A $60,000 PAGA settlement, of which 75% (i.e., $45,000) will be

11                          paid to the Labor & Workforce Development Agency ("LWDA"),

12                          and the remaining 25% (i.e., $15,000) ("PAGA Fund"), will be paid

13                          to PAGA Members, defined as: All persons who worked for

14                          Defendant as non-exempt, hourly employees in the State of

15                          California at any time from August 18, 2021 through July 4, 2024.

16                          **The entire PAGA Fund will be paid to all PAGA Members.**

17       (e)     A Class Representative Enhancement Payment of $10,000 to

18                          Karina Flanagan for her service on behalf of the Settlement Class,

19                          the risks she took in bringing the action on behalf of the class, and

20                          for a general release of all claims arising out of her employment

21                          with Defendant.

22        An objective evaluation of the Settlement confirms that the relief negotiated on

23 the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was

24 negotiated by the Parties at arm's length with helpful guidance from Daniel Turner, Esq.,

25 an experienced and well-respected class action mediator, and the Settlement confers

26 substantial benefits to Class Members. This relief—averaging $261.72 per Class

27 Member from the Net Settlement Fund—is particularly impressive when viewed against

28 the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by

1  settling now rather than proceeding to trial, Class Members will not have to wait

2  (possibly years) for relief, nor will they have to bear the risk of class certification being

3  denied or of Defendant prevailing at trial, or of Plaintiff prevailing at trial but losing on

4  appeal.

5    Accordingly, given the Settlement's favorable terms, the Court's previous

6  findings concerning the Settlement's fairness and reasonableness, and the complete

7  absence of objection to the Settlement, Plaintiff respectfully requests that the Court:

8  (1) grant this Motion for Final Approval of the Settlement Agreement; (2) grant final

9  approval of the settlement administration costs/expenses; (3) enter judgment pursuant to

10  the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

11  **II.    FACTS AND PROCEDURE**

12    **A.    Brief Overview of the Litigation**

13    Defendant owns and operates over twenty "Sbarro" restaurants in California, a

14  quick-service restaurant chain specializing in New York-style pizza sold by the slice and

15  other Italian American cuisine. Plaintiff worked for Defendant at its restaurant inside the

16  Del Amo Fashion Center in Torrance, California as an hourly, non-exempt

17  Cashier/Server from approximately March 2021 to June 2021, and again from August

18  2021 to January 2022. (Dkt. No. 24, Second Amended Complaint ¶ 5.)

19    Plaintiff filed this wage and hour action against Defendant in the San Bernardino

20  County Superior Court on September 7, 2022. (Declaration of Bevin Allen Pike ["Pike

21  Decl."] ¶ 2.) On October 18, 2022, Plaintiff amended her complaint to add a PAGA

22  claim based on the same underlying Labor Code violations. (*Id.*)

23    Defendant filed a motion to compel arbitration of Plaintiff's claims. (*Id.* at ¶ 3.)

24  The motion was ultimately denied on the grounds that Plaintiff was a minor at the time

25  she entered into the contract and during both terms of her employment, turning 18 in

26  April 2022. (*Id.*) After hearing on the Motion to Compel Arbitration, Defendant

27  removed this action to the Central District of California (*Id.*)

28    The operative SAC alleges that Defendant violated the following sections of the

1   California Labor Code and Business and Professions Code: (1) Sections 510 and 1198

2   (unpaid overtime); (2) Sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid

3   minimum wages); (3) Sections 226.7, 512(a), 516, and 1198 (failure to provide meal

4   periods); (4)  Sections 226.7, 516, and 1198 (failure to authorize and permit rest

5   periods); (5)  Sections 226(a), 1174(d), and 1198 (non-compliant wage statements and

6   failure to maintain payroll records); (6) Section 227.3 (failure to pay vested vacation

7   time upon termination); (7) Sections 201 and 202 (wages not timely paid upon

8   termination); (8) Section 204 (failure to timely pay wages during employment);

9   (9) Section 1198 and California Code of Regulations, Title 8, Section 11050 Subdivision

10   5(A) (failure to provide reporting time pay); (10) Section 2802 (unreimbursed business

11   expenses); (11) Sections 2698, *et seq.* (PAGA); (12) California Business & Professions

12   Code sections 17200, *et seq.* (unlawful business practices); and (13) California Business

13   & Professions Code sections 17200, *et seq.* (unfair business practices). (*Id.* at ¶ 4.)

14       Following the exchange of informal discovery, including the production of

15   Defendant's California labor policies and procedures materials, and a sample of Class

16   Members' time and wage records, the Parties participated in a mediation with Daniel

17   Turner, Esq., on April 5, 2024. (*Id.* at ¶ 5.) At all times, the Parties' negotiations were

18   adversarial and non-collusive. (*Id.*)

19       Mr. Turner helped to manage the Parties' expectations and provided a useful,

20   neutral analysis of the issues and risks to both sides. (*Id.* at ¶ 6.) With Mr. Turner's

21   guidance, the Parties were eventually able to negotiate a complete settlement of

22   Plaintiff's claims. (*Id.*) The terms of the settlement are now set forth in complete and

23   final form in the Joint Stipulation of Class Action and PAGA Settlement and Release.

24   (*Id.*) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of

25   the claims at issue. (*Id.* at ¶ 7.)

26       **B.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

27            **1.    Composition of the Settlement Class**

28       The proposed Settlement Class consists of all persons who worked for Defendant

1    as non-exempt, hourly employees in the State of California at any time from July 25,

2    2018 through July 4, 2024. (Settlement Agreement ¶ 5.)

3    **2.    Settlement Consideration**

4    Plaintiff and Defendant have agreed to settle the underlying class claims in

5    exchange for the Gross Settlement Amount of $775,000. The Gross Settlement Amount

6    includes: (1) automatic payments to all Participating Class Members—meaning, all

7    Class Members except those who submit timely and valid Requests for Exclusion—

8    from the Net Settlement Fund; (2) $258,333 in attorneys' fees (i.e., one-third of the

9    common fund) and $17,770.87 in litigation costs to Plaintiff's Counsel; (3) Settlement

10   Administration Costs of $15,250; (4) a $45,000 payment to the LWDA and a $15,000

11   payment to PAGA Members; and (5) a Class Representative Enhancement Payment of

12   $10,000 for Plaintiff's service on behalf of the Settlement Class, the risks she took in

13   bringing her representative claims, and for a general release of all claims arising out of

14   her employment with Defendant. (Settlement Agreement ¶¶ 34-38.)

15   Payments to Participating Class Members will be made from the Net Settlement

16   Fund. (Settlement Agreement ¶ 42(a).) The individual allocations will be calculated on a

17   pro-rata basis using the number of weeks worked by each Class Member during the

18   Class Period. (*Id.*)

19   Payments to PAGA Members will be made from the PAGA Fund. (Settlement

20   Agreement ¶ 42(b).) The individual allocations will be calculated on a pro-rata basis

21   using the number of weeks worked by each PAGA Member during the PAGA Period.

22   (*Id.*)

23   **3.    Releases by Participating Class Members and PAGA Members**

24   In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class

25   Members will release the Released Class Claims during the Class Period. (Settlement

26   Agreement ¶¶ 24, 55.) And in exchange for the PAGA Settlement Amount, Plaintiffs,

27   the LWDA, and PAGA Members will release the Released PAGA Claims during the

28   PAGA Period. (*Id.* at ¶ 25, 56.)

**C.    The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services. (O'Connor Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order, will include: (1) printing and mailing the Notice of Class Action Settlement ("Notice"); (2) receiving and processing undeliverable Notices and locating updated addresses for Class Members; (3) receiving and validating Requests for Exclusion; (4) calculating and distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary reports and declarations; and (7) performing such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or that the Court orders. (*Id.*)

On January 17, 2025, CPT received the Class Notice prepared jointly by Plaintiff's Counsel and counsel for Defendant and approved by the Court. (O'Connor Decl. ¶ 3.) The Class Notice summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object. (*Id.*)

Separately, counsel for Defendant provided CPT with a mailing list (the "Class List"), which included each Class Member's full name, last known address, Social Security Numbers, and information necessary to calculate payments. (O'Connor Decl. ¶ 3.) The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 4.) On February 21, 2025, CPT mailed Class Notices to Class Members via First-Class U.S. mail. (*Id.*) Class Members were given 45 days to opt out or object to the Settlement. Plaintiff is pleased to report that no Class Members opted out, and no Class Members objected to the Settlement. (*Id.* at ¶¶ 6-7.)

III.    **ARGUMENT**

      A.    **Class Certification Requirements Are Met**

      The Court certified the Settlement Class for settlement purposes upon Preliminary Approval, finding that requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* ECF No. 31.) Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the Settlement Class.

      B.    **The Court Should Grant Final Approval of the Class Settlement**

      Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

1   *Hanlon*, 150 F.3d at 1027.

2       Guided by these policies, the district court then may consider some or all of the

3   following factors in evaluating the reasonableness of a settlement: (1) the strength of the

4   plaintiff's case and the risk, expense, complexity, and likely duration of further litigation;

5   (2) the risk of maintaining class action status throughout trial; (3) the amount offered in

6   settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the

7   participation of a governmental participant; (6) the experience and views of counsel; and

8   (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

9       The amendments to Rule 23 direct the Court to consider a similar list of factors,

10  including whether: (1) the class representatives and class counsel have adequately

11  represented the class; (2) the proposal was negotiated at arm's length; (3) the relief

12  provided for the class is adequate, taking into account: (a) the costs, risks, and delay of

13  trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the

14  class, including the method of processing class-member claims; (c) the terms of any

15  proposed award of attorney's fees, including timing of payment; and (d) any agreement

16  required to be identified under Rule 23(e)(3); and (4) the proposal treats class members

17  equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's

18  notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead

19  aim to focus the court and attorneys on 'the core concerns of procedure and substance

20  that should guide the decision whether to approve the proposal.'" *In re Extreme*

21  *Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22,

22  2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

23      Additionally, for class action settlements prior to contested certification, the Ninth

24  Circuit further requires that the Court scrutinize the settlement even more closely,

25  applying the so-called *Bluetooth* factors. *See In re Bluetooth Headset Prods. Liab. Litig.*,

26  654 F.3d 935, 938 (9th Cir. 2011); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir.

27  2015). As set forth below, the Settlement satisfies all of these factors, meriting final

28  approval.

1        **C.**      **The Settlement Was Negotiated at Arm's Length by Experienced**

2               **Counsel**

3        The Settlement is the result of the Parties' arm's-length negotiations by

4 experienced class action attorneys. Plaintiff is represented by Capstone Law APC.

5 Plaintiff's Counsel employ seasoned class action attorneys who regularly litigate wage

6 and hour claims through certification and on the merits and have considerable

7 experience settling wage and hour class actions. (Pike Decl. ¶¶ 13-21, Ex. 1.) Defendant

8 is represented by Greenberg Traurig, an experienced defense firm.

9        **D.**      **The Extent of Discovery Completed Supports Preliminary Approval**

10        As set forth in greater detail in Plaintiff's Counsel's declaration in support of the

11 Motion, based on their analysis of documents and class data produced by Defendant,

12 including Defendant's California labor policies and procedures materials and a sample of

13 Class Members' time and pay records, Plaintiff's Counsel were able to realistically

14 assess the value of Plaintiff's claims and intelligently engage defense counsel in

15 settlement discussions that culminated in the proposed settlement now before the Court.

16 (Pike Decl.¶¶ 7-11.)

17        By engaging in a thorough investigation and evaluation of Plaintiff's claims,

18 Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms

19 set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best

20 interests of Class Members in light of all known facts and circumstances, including the

21 risk of significant delay and uncertainty associated with litigation, various defenses

22 asserted by Defendant. (*Id.* at ¶ 12.)

23        **E.**      **The Settlement Is Within the Range of Reasonableness Considering**

24               **the Strength of Plaintiff's Case and the Risk, Expense, Complexity,**

25               **and Duration of Further Litigation**

26        Based on their analysis of documents and data produced by Defendant, Plaintiff's

27 Counsel were able to estimate the value Plaintiff's claims for settlement purposes

28 (discussed in more detail in Plaintiff's Memorandum of Points and Authorities in

1  Support of Motion for Preliminary Approval of Class Action Settlement, pp. 16-18; ECF

2  No. 26). That estimate, however, assumed that each and every one of Plaintiff's claims

3  would have been certified for class-wide resolution, that Plaintiff would have prevailed

4  at trial, and that the jury's verdict would have been affirmed on appeal. Understandably,

5  for purposes of evaluating the settlement's reasonableness, this estimate must be

6  "tempered by factors such as the risk of losing at trial, the expense of litigating the case,

7  and the expected delay in recovery (often measured in years)." *In re Toys R Us-*

8  *Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D.

9  438, 453 (C.D. Cal. 2014).

10      Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for

11  settlement purposes by offsetting Defendant's maximum theoretical liability by: (a) the

12  strength of the defenses to the merits of Plaintiff's claims; (b) the risk of class

13  certification being denied; (c) the risk of losing on any of a number of dispositive

14  motions that could have been brought between certification and trial (e.g., motions to

15  decertify the class, motions for summary judgment, and/or motions in limine) that might

16  have eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support

17  of the claims; (d) the risk of losing at trial; (e) the chances of a favorable verdict being

18  reversed on appeal; and (f) the difficulties attendant to collecting on a judgment

19  (collectively, the "Discount Factors").

20      After taking into account the Discount Factors, Plaintiff's Counsel determined

21  that it would be reasonable to settle for a fraction of Defendant's estimated exposure for

22  the class claims (PAGA discussed in the following section), or approximately 20%.

23  Such a discount is inherently reasonable given that Plaintiff would have had to overcome

24  multiple, dependent contingencies to prevail on her claims. If anything, the projected

25  odds for each of the above contingencies is generous to the class's position, since

26  plaintiffs in employment cases rarely prevail on all of the claims at any of these

27  dispositive stages. Courts routinely approve settlements that provide a similar discounted

28  range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust*

1    *Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement

2    amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car*

3    *Antitrust Litig.*, 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of

4    1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs.*

5    *Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas*

6    *v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014)

7    (finding that settlement which amounted to 8% of maximum recovery "[fell] within the

8    range of possible initial approval based on the strength of plaintiff's case and the risk and

9    expense of continued litigation."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

10   1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

11   **F.    The Settlement Class Has Responded Positively to the Settlement**

12       In evaluating the fairness of a Settlement, the "absence of a large number of

13   objections to a proposed class action settlement raises a strong presumption that the

14   terms of a proposed class settlement action are favorable to the class members." *Nat'l*

15   *Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, no

16   Class Members opted out, and no Class Members have objected to the Settlement.

17   (O'Connor Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly positive," supporting

18   approval of the Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th

19   at 1152-53 (finding support for the settlement where 80 out of 5,454 class members

20   elected to opt out and nine class members objected); *Chun-Hoon v. McKee Foods Corp.*,

21   716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of

22   329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut.*

23   *Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr.

24   22, 2010) (finding an opt-out rate of 0.4% supported settlement). In other words, "[t]he

25   fact that the overwhelming majority of the class willingly approved the offer and stayed

26   in the class presents at least some objective positive commentary as to its fairness."

27   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

28       The average settlement payment from the Net Settlement Fund is $261.72 and the

1  highest is $1,644.24. (O'Connor Decl. ¶ 8.) This average net recovery is significantly

2  higher than many wage and hour class action settlements approved by California state

3  and federal courts.[2]

4    **G.    The Court Should Approve the PAGA Settlement**

5    Based on information and evidence produced by Defendant during discovery,

6  Plaintiff determined that aggrieved employees worked a combined total of

7  approximately 17,500 pay periods during the PAGA statute of limitations period

8  ("PAGA Period"). Unless otherwise provided by the Labor Code, PAGA civil penalties

9  for Labor Code violations are calculated according to Labor Code 2699(f)(2): If, at the

10  time of the alleged violation, the person employs one or more employees, the civil

11  penalty is $100 for each aggrieved employee per pay period for the initial violation and

12  $200 for each aggrieved employee per pay period for each subsequent violation (the

13  "subsequent violation penalty").

14    However, a number of courts have found that the "subsequent" penalty under

15  PAGA applies only after a <u>court</u> or the <u>Labor Commissioner</u> determines that the

16  employer has violated the Labor Code. *See Gunther v. Alaska Airlines, Inc.*, 72 Cal.

17  App. 5th 334, 356 (2021) ("the increased $200 civil penalty for 'subsequent violation[s]'

18  does not apply unless [Plaintiff] presents evidence that the Labor Commission or a court

19

20  ───────────────

[2] *See*, *e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 7, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct. Sept. 29, 2006) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct. Jan. 20, 2006) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct. July 23, 2010) (average net recovery of approximately $20); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (average net recovery of approximately $50); and *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct. Oct. 11, 2012) (average net recovery of approximately $80).

1    notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v. Virgin*

2    *Am., Inc*., 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened

3    civil penalties" because the defendant was not given notice by the Labor Commissioner

4    when the "subsequent" violations occurred). Under this line of cases, Defendant's

5    exposure would be approximately $1,750,000 = 17,500 violative pay periods × $100.

6         It should be noted that PAGA gives the Court wide latitude to reduce the amount

7    of civil penalties "based on the facts and circumstances of a particular case" when "to do

8    otherwise would result in an award that is unjust, arbitrary and oppressive, or

9    confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have

10   considered issues including whether the employees suffered actual injury from the

11   violations, whether the defendant was aware of the violations, and the employer's

12   willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504,

13   528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter*

14   *v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No.

15   ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

16        For example, during the penalty phase of trial in *Carrington*, the plaintiff

17   requested PAGA penalties in the amount of approximately $70 million. The trial court

18   instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this

19   reduction was warranted because imposing the maximum penalty would be "unjust,

20   arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with

21   meal period obligations and because the court found the violations were minimal.

22   *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's

23   reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

24        Plaintiff therefore determined an appropriate range of settlement for PAGA

25   penalties as a percentage of the settlement range that was consistent with other hybrid

26   class/PAGA settlements approved by California courts. Where PAGA penalties are

27   negotiated in good faith and "there is no indication that [the] amount was the result of

28   self-interest at the expense of other Class Members," such amounts are generally

considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g., Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

### H. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

Plaintiff requests final approval of settlement administration costs in the amount of $15,250. (O'Connor Decl. ¶ 10.) CPT has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* O'Connor Decl.) Accordingly, the $15,250 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

## IV. CONCLUSION

The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiff and her counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable. Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement Agreement and enter judgment.

Dated: April 30, 2025                    Respectfully submitted,

By: /s/ Bevin Allen Pike
Bevin Allen Pike*
Daniel Jonathan
Trisha K. Monesi
**CAPSTONE LAW APC**

Attorney for Plaintiff Karina Flanagan

* **L.R. 11-6.2 CERTIFICATION**—
Counsel of record for Plaintiff certifies that this memorandum contains 4325 words, which complies with the word limit of L.R. 11-6.1